

SEALED

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JUL 18 2014

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
### for the
### Western District of Virginia

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Stored Electronic Communications (Text Messages) of Telephone Number - (276)608-9483

)
)
)
)
)
)
)

Case No. 1:14 MJ00184

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A"

located in the _____ District of New Jersey _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 U.S.C. 846 | Conspiracy to Distribute Methamphetamine |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher L. Parks, DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/18/14

_____
*Judge's signature*

City and state: Abingdon, Virginia

Pamela Meade Sargent, US Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Particular Verizon Wireless Accounts to Be Searched

This warrant applies to records and other information (including the contents of communications) for the Verizon Wireless accounts associated with the telephone number[s]:

### (276)608-9483

(July 3, 2014 to Present)

to the extent that such records and other information are within the possession, custody, or control of Verizon Wireless, located at 180 Washington Valley Rd., Bedminster, New Jersey, 07921. Verizon Wireless is required to disclose to the government, for each such account;

    a.   All text messages stored and presently contained in, or on behalf of the account;

    b.   All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message.

# ATTACHMENT B

## Particular Things to be Seized

All fruits, evidence, and instrumentalities of violations of the statutes listed on the application, including (for each account identified on Attachment A):

1.  The contents of all records or other information stored in the account, including copies of text messages in the account, relating to:

    a.  Text messages relating to the distribution of controlled substances and any conspiracy to distribute controlled substances.

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

Abingdon Division

| | | |
|---|---|---|
| IN THE MATTER OF SEARCH OF | ) | UNDER SEAL |
| STORED ELECTRONIC | ) | |
| COMMUNICATIONS (TEXT | ) | Case No. |
| MESSAGES) OF TELEPHONE | ) | |
| NUMBER(S) – (276) 608-9483 | ) | |

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT AND SEARCH WARRANT

I, Christopher L. Parks, Task Force Officer, United States Department of Justice, Drug Enforcement Administration, being duly sworn, do depose and state as follows:

I make this affidavit in support of an application for a search warrant for certain accounts controlled by Cellco Partnership dba Verizon Wireless, a cellular provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921. The accounts to be searched are described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Verizon Wireless to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

I am a Task Force Officer for the United States Drug Enforcement Administration (DEA) and have been assigned this position for approximately one (1) and a half (1/2) years. I have been employed by the Abingdon Police Department (APD) for approximately thirteen (13) years with the previous eight (8) years being assigned to investigate drug cases. Prior to working for the APD I worked for approximately one (1) year for the Glade Spring Virginia Police Department and Virginia Highlands Community College Campus Police.

I was trained as a Police Officer at the Southwest Virginia Criminal Justice Training Academy in Bristol, Virginia. During my training at the law enforcement academy I received specialized training in drug laws and drug recognition. Over the past thirteen (13) years I have attended several classes/courses specializing in techniques and procedures to investigate drug cases. This training includes courses that directly relate to possession, manufacturing and distribution of drugs and their subsidiaries and include the drugs, marijuana, cocaine, heroin, methamphetamine, and prescription drugs. For the past five (5) years I have taught at the law enforcement academy. The course I teach is drug identification and recognition. Additionally I have done numerous presentations on the subject of methamphetamine.

1

During my employment as Police Officer/Task Force Officer I have directed/participated in numerous investigations involving the seizure of the above listed controlled substances, the seizure of narcotic related records and other types of evidence that document a criminal organization's activities in both the manufacturing, possessing and distribution of controlled substances.

To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance and various types of informants and cooperating sources. Through these investigations, my training and experience, and conversations with other experienced Agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard narcotics, to distribute narcotics, and collect and launder related proceeds. I am aware of the sophisticated tactics they routinely use to attempt to thwart any investigation of their narcotics organizations. My knowledge of these tactics, which include the utilization of numerous different cellular telephones, beepers, counter surveillance, elaborately planned distribution schemes tied to legitimate businesses, false or fictitious identities, and coded communications and conversations, has been particularly useful and relevant to this investigation.

The information contained in this affidavit is based on my personal observations, observations of other law enforcement officers, observations of Cooperating Sources (CS) as related to me, my review of official police and government reports, my review of records and documents gathered during this investigation, and consultation with other Agents involved in the investigation.

This affidavit contains information necessary to support probable cause for the search warrant. The information contained in this affidavit is not intended to include each and every fact and matter observed by or known to the United States.

This affidavit is submitted in support of a request that a search warrant be issued for the stored electronic communications, specifically text messages, associated with the cellular telephone(s) bearing telephone number(s) (276) 608-9483 (hereinafter referred to as Target Telephone #1).

According to the records of Verizon Wireless, Target Telephone #1 was resold to TracFone Wireless with no subscriber information available. It is believed by your affiant that the user of this telephone number is Michael Wayne BOWMAN of Abingdon, VA.

## STATEMENT OF PROBABLE CAUSE

As a result of a multi-agency investigation into the trafficking of crystal methamphetamine in and around the Southwest Virginia region, your affiant knows that Richard Charles Shaw, aka "Rick Shaw", was a major importer and distributor of methamphetamine who resided in Mountain City, TN. In April 2014, Shaw was charged with Conspiracy to Distribute Methamphetamine in the Western District of Virginia.

On April 23, 2013, a search warrant was applied for and obtained in the Western District of Virginia for text messages stored in the accounts of telephone number (423) 302-9299 (Rick Shaw) and others. In response to the execution of this search warrant on Verizon Wireless, agents received text messages stored in that account from April 9 to April 23, 2013. The following is an excerpt from the search warrant results:

On April 22, 2013, Rick Shaw exchanged the following text messages with the user of telephone number (276) 591-7057 (subsequently identified as Michael Wayne BOWMAN):

Shaw to BOWMAN, *"Happy Birthday to me hey buddy how u doing"*
BOWMAN to Shaw, *"...It's a mess Rick I'm taking a break till all this shit is over. Happy Birthday mine was the 14th and another year younger. I'm now 39 LOL"*

This investigation has revealed that Shaw's birth date is April 22, 1955 and BOWMAN's birth date is April 14, 1956, which coincides with the above conversation.

In November 2013, CS-1 provided the following information to law enforcement through several letters and interviews:
CS-1 stated that Michael Wayne BOWMAN was a methamphetamine distributor who lived in Abingdon, VA. CS-1 stated that BOWMAN worked with James Muncy in the distribution of methamphetamine. CS-1 stated that BOWMAN and Muncy sold methamphetamine for Nick Burks in Abingdon, VA. CS-1 stated that BOWMAN and Muncy sometimes transported the methamphetamine on Harley Davidson motorcycles, of which BOWMAN owned two (2).
CS-1 stated that BOWMAN was supplied methamphetamine by Rick Shaw in Mountain City, TN. CS-1 stated that BOWMAN was supplied methamphetamine by "PJ" in Hazard, KY. CS-1 stated that BOWMAN was supplied marijuana by J.B. Buckner in Pulaski, VA.
CS-1 stated that the following persons were involved with BOWMAN in the distribution and/or use of methamphetamine: Richard Bays, Roy Newton, Gary Long, Liz LNU (Trivette), Shanna LNU (Moorefield), William Booher, Michael LNU, "DJ", Brandon LNU and others.
CS-1 stated that BOWMAN was currently involved in a romantic relationship with Jennifer Morgan (telephone number (276) 639-5000). CS-1 stated that BOWMAN was also involved in a sex for drugs relationship with Shanna (Moorefield).
CS-1 stated that BOWMAN's cellular telephone numbers were (276) 591-7057 and (276) 274-7312. CS-1 stated that BOWMAN's son, Austin Bowman, had a cellular telephone number of (276) 591-7636.
CS-1 stated that James Muncy's cellular telephone number was (540) 553-2764.
CS-1 stated that Nick BURK's cellular telephone number was (276) 608-9732.
CS-1 stated that "PJ's" cellular telephone number was (606) 275-0918.
CS-1 stated that Richard Bays' cellular telephone numbers were (276) 701-4718 and (276) 623-7266.
CS-1 stated that Roy Newton's cellular telephone number was (423) 646-8845.

CS-1 stated that Gary Long's cellular telephone numbers were (276) 206-3090 and (276) 695-0183.

CS-1 stated that Liz (Trivette's) cellular telephone number was (423) 440-1926.

CS-1 stated that Shanna (Moorefield's) cellular telephone number was (605) 760-0309.

CS-1 stated that William Booher's cellular telephone number was (423) 366-2446.

CS-1 stated that Michael LNU's cellular telephone number was (423) 502-3828 and (423) 646-6424.

CS-1 stated that Brandon LNU's cellular telephone number was (423) 534-9970.

CS-1 stated that BOWMAN communicated with his drug distributors via the text message capabilities on his cellular telephones.

In November 2013, the cellular telephone utilizing telephone number (276) 591-7057 (previously utilized by Michael BOWMAN) was voluntarily transferred to ATF SA Corey Duke by CS-1.

On November 25, 2013, ATF SA Corey Duke obtained federal search warrant in the Western District of Virginia for electronic contents contained in the cellular telephone described as Samsung Galaxy S-III, Model SCH-1535, IMIE: 990002097279200 which is the cellular telephone that utilized telephone number (276) 591-7057 (previously utilized by Michael BOWMAN). Pursuant to this SW the electronic data was extracted from this phone and analyzed. From this analysis the following conversations were noted:

**August 22, 2013**

> BOWMAN to Nick Burks, "*What's going on little buddy? I was thinking about running across the hill and just wanted to see if you could wait a few more days for me to settle up with you.*"
> Burks to BOWMAN, "*No problem*"
> BOWMAN to Burks, "*What about that other bike you showed me. What did you think about it?*"
> Burks to BOWMAN, "*Not as fast*"
> BOWMAN to Burks, "*Ok I will go the other way.*"
>
> BOWMAN to Rick Shaw, "*Are you not home buddy?*"
> BOWMAN to Shaw, "*Hey buddy what's going on? Are you home tonight or in the morning?*"
> Shaw to BOWMAN, "*Hey what ya n to*"
> BOWMAN to Shaw, "*Nothing much today. Been working on my bikes a bit today and my mower. When can I see you?*"
> Shaw to BOWMAN, "*N the morning*"
> BOWMAN to Shaw, "*Sounds good. 10 ok*"
> Shaw to BOWMAN, "*Yeah man*"

4

BOWMAN to Shaw, "*Be there in a few I'm on your side of shady.*"
Shaw to BOWMAN, "*K*"

Based on my training and experience, and my knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service on his cellular telephone to communicate with Nick Burks on his cellular telephone. I believe that BOWMAN and Burks agreed that BOWMAN could have extra time to pay back his drug debt to Burks. I believe that BOWMAN asked Burks about a secondary source of methamphetamine ("*other bike*"), to which Burks replied that it was not as good ("*not as fast*"). I believe that BOWMAN then contacted Rick Shaw via text message and arranged to pick up methamphetamine in Mountain City, TN ("*across the hill*").

**September 20 – 25, 2013**

BOWMAN to Liz Trivette, "*Hey you are you wanting something and do you have all in order*"
Trivette to BOWMAN, "*Hey Mike... yes and yes but I'm outta town until Sunday... how abt Monday??*"
BOWMAN to Trivette, "*Do you have my money*"

Trivette to BOWMAN, "*Can we meet tomorrow*"
Trivette to BOWMAN, "*Hey Mike wasn't ignoring you I have been really busy trying to take care of things around the house..the girls..and help with my grandmother too.. they diagnosed her as legally blind last week so we have had a ttime and a half getting her adjusted at home*"
BOWMAN to Trivette, "*Are you ready to see me?*"

BOWMAN to Rick Shaw, "*Hey buddy are you going to be home?*"
Shaw to BOWMAN, "*Yes sooner the better*"

Brandon LNU to BOWMAN, "*Hey buddie u got one i can get*"
BOWMAN to Brandon LNU, "*How long will it take you to meet me*"
Brandon LNU to BOWMAN, "*Can be at the spot in 30*"

Based on my training and experience, and my knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service on his cellular telephone to communicate with Liz Trivette regarding her drug debt and additional methamphetamine to sell. I believe that BOWMAN communicated with Rick Shaw via text message to ascertain his availability for BOWMAN to pick up additional methamphetamine. I believe that BOWMAN agreed to sell Brandon LNU one (1) ounce of methamphetamine.

**October 1 – 2, 2013**

Michael LNU to BOWMAN, "*Hey mike how ya doin? Hey buddy I have my grandmas funeral today at 3 but when I get outta there I was gonna see if u had*"

*two of those I could get from ya! I'll meet ya or come over either way! Thanks man!"*
BOWMAN to Michael LNU, *"Give me a yell when you get done."*
Michael LNU to BOWMAN, *"Ok buddy thanks"*

Michael LNU to BOWMAN, *"Ok buddy I'm on my way back to get my car can u still do that for me!"*
BOWMAN to Michael LNU, *"How long will you be"*
Michael LNU to BOWMAN, *"I'm 5 mins from my house and then I'm headed ur way 25 mins maybe"*
BOWMAN to Michael LNU, *"Hurry. Let me know when you get off at 7"*
Michael LNU to BOWMAN, *"Ok so were meetin in same spot right?"*
BOWMAN to Michael LNU, *"Yes whe f2f e are you? You should be there by now."*
Michael LNU to BOWMAN, *"Gettin of exit"*
BOWMAN to Michael LNU, *"K be right there."*

BOWMAN to Rick Shaw, *"Leaving now rinning behind. On motorcycles and james is riding with if that's cool. Came thete eith nick see you in 50 min"*
Shaw to BOWMAN, *"K"*

BOWMAN to Rick Shaw, *"Home and good shape my friend."*
Shaw to BOWMAN, *"10/4"*

Gary Long to BOWMAN, *"Hey"*
BOWMAN to Long, *"I'm not in the area now. Be 7inish"*

Brandon LNU to BOWMAN, *"Hey buddie u got one for me"*
BOWMAN to Brandon LNU, *"It will be later I'm not in the area now."*
Brandon LNU to BOWMAN, *"Hey buddie u think u can do 1 an half"*
Brandon LNU to BOWMAN, *"Hey make that 2"*
BOWMAN to Brandon LNU, *"K"*

Based on my training and experience, and my knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service on his cellular telephone to arrange the sale of two (2) ounces of methamphetamine to Michael LNU. I believe that BOWMAN advised Rick Shaw that he was running late to pick up methamphetamine and that James Muncy was with him, riding motorcycles. I believe that BOWMAN advised Shaw when he arrived home safely with the methamphetamine. I believe that BOWMAN communicated with Gary Long and Brandon LNU regarding his availability to sell methamphetamine, and agreed to sell two (2) ounces of methamphetamine to Brandon LNU.

BOWMAN to Shanna Moorefield, "*I won't be available after 4 so if you want me you better get with me soon. I can hook you up with your heat if you want to hook me up with some hot loving baby.*"

Based on my training and experience, and my knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service on his cellular telephone to offer to provide methamphetamine ("*heat*") to Shanna Moorefield in exchange for sex.

On December 6, 2013, a controlled purchase of one (1) ounce of methamphetamine was made from Nick Burks in Abingdon, VA. The transaction was arranged by contacting Burks on his cellular telephone. Prior to the purchase, CS-2 observed Michael BOWMAN deliver the methamphetamine to Burks. CS-2 was able to obtain a cellular telephone number for BOWMAN of (276) 274-7312.

On December 10, 2013, a traffic stop was conducted in Pulaski County, VA on a white GMC Yukon being driven by Michael BOWMAN. Prior to the stop, BOWMAN was observed at the residence of J.B. Buckner in Radford, VA.

Pursuant to a consent search of the vehicle, BOWMAN was found to be in possession of a smoking device believed to contain methamphetamine, a handgun, and approximately $3,000.00 U.S. Currency.

BOWMAN provided telephone number (276) 274-7312 as a contact number. BOWMAN was released pending the lab results on the smoking device.

On April 24, 2014, CS-2 met with Nick Burks in Abingdon, VA. Prior to the meeting, CS-2 sent the following text to Burks on his cellular telephone:

"*I have called a time or so. I need to come that way if u got parts and tools? Summer coming got rides bro.*"

According to CS-2, "parts" and "tools" are code words used to disguise the fact that they were referring to methamphetamine. CS-2 stated that it is common for Burks and others to use these words in place of methamphetamine.

Following the meeting with Burks, CS-2 told agents that Burks agreed to provide the contact information for "Mike" (Michael BOWMAN) so that CS-2 could communicate directly with the methamphetamine supplier. Burks utilized his phone to exchange the following text messages with CS-2:

Burks to CS-2, "*4239567130*"
CS-2 to Burks, "*Tell him I'm callin*"
CS-2 to Burks, "*Been playin phone tag get back to need parts.*"
CS-2 to Burks, "*Thanks for hooking me up with Mike*"

CS-2 stated that he called telephone number (423) 956-7130 (Target Telephone #2) in an attempt to contact "Mike", but there was no answer. Afterwards, CS-2 received a telephone call from Michael BOWMAN utilizing telephone number (276) 696-2684 (Target Telephone #3) and arranged to purchase methamphetamine from BOWMAN.

On April 25, 2014, a controlled purchase of approximately one (1) ounce of methamphetamine for $1,850.00 was made from Michael BOWMAN in Bristol, VA. Prior to the purchase, CS-2 communicated with BOWMAN on his cellular telephone via the following text messages:

CS-2 to BOWMAN, "*I need to go to SAMs I meet u there if that is ok*"
BOWMAN to CS-2, "*That's cnl what time*"
CS-2 to BOWMAN, "*I'm running on slow this morning. Let u no when I leave shop here.*"
BOWMAN to CS-2, "*I know me too. 1 2 whole he never said. Its raining a lot here*"
BOWMAN to CS-2, "*It cant rain 1 or 2 inches today. What do u think?*"
CS-2 to BOWMAN, "*1*"
CS-2 to BOWMAN, "*1 wheel 1,850*"
BOWMAN to CS-2, "*How long you going to be*"
CS-2 to BOWMAN, "*I rode bike to work it's raining like hell here I'm waiting for old lady to bring my truck*"
BOWMAN to CS-2, "*Ok*"

CS-2 to BOWMAN, "*Hey on way bro*"
CS-2 to BOWMAN, "*Be there in min*"
BOWMAN to CS-2, "*Im running behind too. Be there in 20*"
CS-2 to BOWMAN, "*Ok good deal*"
CS-2 to BOWMAN, "*I'm here*"

Based on my training and experience, and my knowledge of this investigation, I believe that CS-2 communicated with Michael BOWMAN via the text messaging service on his cellular telephone to consummate the purchase of one (1) ounce of crystal methamphetamine ("*wheel*") for $1,850.00. I believe that BOWMAN referred to Nick Burks when he texted "*1 2 he never said*", referring to Burks mediating the transaction between CS-2 and BOWMAN.

During the drug transaction, BOWMAN discussed the December 10th traffic stop and told CS-2 that the police were watching him. BOWMAN told CS-2 that he was very careful and could be trusted.

On April 30, 2014, CS-4 was interviewed in Abingdon, VA. CS-4 stated that Nick Burks and Michael BOWMAN were both associated with Rick Shaw in the distribution of methamphetamine in SW VA.

8

On May 2, 2014, a search warrant was applied for and obtained in the Western District of Virginia for text message content stored in the account of Michael BOWMAN's cellular telephone. The following is an excerpt from those text messages:

**April 17, 2014**

BOWMAN to Jennifer Morgan, "*CALL ME THIS IS MIKE'S FRIEND PJ. IT IMPORTANT.*"

**April 18, 2014**

Jennifer Morgan to BOWMAN, "*WHY DID YOUR FRIEND TEXT ME?*"

BOWMAN to Morgan, "*HE WAS TRYING TO GET A PHONE NUMBER HE GOT WORRIED EVERYTHING IS GOOD IM SORRY HUGE PLACE AND LOTS OF CONSTRUCTION AND YOU TAKE A HILLBILLY TO THE CITY IS DANGEROUS AND EASY TO GET TURNED AROUND ALL MY EXES LIVE IN LOL JUST KIDDING YOU SHOULD KNOW WHERE I AM IF YOU KNOW MY FAVORITE FOOTBALL TEAM*"

Morgan to BOWMAN, "*I DON'T KNOW YOUR FAVORITE FOOTBALL TEAM AND REALIZED MONTHS AGO THAT I DIDN'T KNOW YOU AT ALL. THE LESS I KNOW ABOUT THE REAL YOU THE BETTER OFF I'LL BE.*"

Morgan to BOWMAN, "*THAT S WHY I HAVEN T ASKED YOU ANYTHING ABOUT YOUR TRIP I DON T WANT TO KNOW WHERE YOU ARE WHO YOU RE SEEING OR WHY IT SCARES ME AND I DON T WANT ANY PART OF IT YOU RE PLAYING WITH FIRE AND EVENTUALLY YOU LL GET BURNED I TOLD YOU THAT A LONG TIME AGO*"

Based on my training and experience, and my knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service of his phone to contact his girlfriend, Jennifer Morgan. During the course of the exchange BOWMAN told Morgan that he was in Texas with "PJ" (subsequently identified as Phillip John Muncy). Based on information received during this investigation, agents are aware that BOWMAN'S source of supply for methamphetamine is Muncy and the two (2) of them travel to Texas where Muncy obtains methamphetamine from a source of supply there. Morgan also told BOWMAN that she did not want to know why he was there because she was afraid of his illegal activities.

**April 19, 2014**

BOWMAN to Morgan, "*I CANT INDERSYAND YOU AT ALL JENNIFER AND THE WAY YOUR DOING ME DO YOU NOT GIVEBA FUCK AT ALL ABOUT ME AND IM NOTHING TO YOU HOW DID YOU HOLD ME AND MAKE LOVE*"

*TO ME THE WAY YOU DID THE LAST TIME AND TELL ME HOW MUCH YOU LOVE ME AND THEN DO ME LIKE THIS"*

Morgan to BOWMAN, *"AND YOU DON T HAVE A CLUE HOW YOU TREAT ME READ YOUR MESSAGES TO ME LAST NIGHT YOU DIDN T SAY I WANT TO SPEND A FEW DAYS WITH YOU BUT I MAY NEED TO STAY WITH YOU YOU KEEP USING ME JUST LIKE ALWAYS AND I M YOUR LAST CHOICE WHEN NONE OF YOUR OTHER WHORES CAN HELP YOU OUT AND NOW YOUR MIXED UP IN SOME BAD STUFF THAT I WARNED YOU ABOUT A LONG TIME AGO AND YOU WANT ME TO GO DOWN RIGHT BESIDE OF YOU AND I VE GOT NOTHING TO WITH IT YOU CARRY AROUND 3 DIFFERENT TELEPHONES LIE TO ME AND TELL ME YOU DON T HAVE ANYTHING TO SMOKE AND COME OVER TO FUCK ME AND SMOKE MY STUFF IF YOU RE NOT USING ME I DON T KNOW WHAT YOU CALL IT YOU TAKE ADVANTAGE OF MY FEELINGS FOR YOU BECAUSE YOU KNOW THAT I LOVE YOU BUT ITS ALL BEEN A BIG GAME TO YOU PLAYING AROUND WITH YOUR NASTY LITTLE WHORES BEHIND MY BACK AS AND EXPECT ME TO BE THERE WHEN YOU RE DOWN AND OUT I REALLY BELIEVED IN YOU AS AND I DIDN T FIND OUT THE TRUTH ABOUT YOU UNTIL I WAS ALREADY HEAD OVER HEELS GO PLAY WITH SHANA"*

Based on my training and experience, and knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service of his phone to contact Jennifer Morgan on her cellular telephone. During the exchange Morgan stated that she was afraid she was going to go down alongside of BOWMAN for the illegal activities in which BOWMAN was involved (distributing methamphetamine). Morgan also indicated during the exchange, that she and BOWMAN smoked (believed by your affiant to be methamphetamine) together.

**April 24, 2014**

Nick Burks to BOWMAN, *"FRANKIE B CALLIN SHORTLY ANSWER OR CALL HIM 2984331"*

Based on my training and experience, and knowledge of this investigation, I believe that Nick Burks utilized the text messaging service of his phone to contact Michael BOWMAN on his phone. During the text Burks told BOWMAN to either answer the phone or call CS-2, and provided the telephone number for CS-2.

**May 2, 2014**

BOWMAN to James Muncy, *"HEY DID YOU GET MY PARTS TOGETHER I NEEED"*
BOWMAN to Muncy, *"HEY BUDDY DID YOU GET MY PARTS I NEED TOGETHER?"*

Burks to BOWMAN, *"IM GOIN AT LUNCH 2 MEET HIM"*

Based on my training and experience, and knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service of his phone to contact Nick Burks on his phone and James Muncy. BOWMAN inquired whether or not they had the "parts". Throughout this investigation the conspirators have referred to methamphetamine and money as "parts". I believe that BOWMAN was attempting to collect drug money from Burks and Muncy so that he could take a trip to purchase additional methamphetamine.

On May 11, 2014, CS-2 made contact with Michael BOWMAN on his phone. CS-2 was advised by BOWMAN that BOWMAN was in Kentucky and had to "make a run". Based on my knowledge of this investigation, I know that BOWMAN is supplied methamphetamine by Phillip John "PJ" Muncy from Hazard, KY. Agents believe that BOWMAN and "PJ" Muncy travel to Texas where Muncy facilitates the purchase of methamphetamine for BOWMAN.

On June 5, 2014, a search warrant was applied for and obtained in the Western District of Virginia for text message content stored in the accounts of cellular telephones utilized by Jennifer Morgan, James Muncy and Darrell Johnson. In response to the execution of this search warrant on Verizon Wireless, agents received text messages stored in those accounts from May 22, 2014 to June 5, 2014. The following is an excerpt from the search warrant results:

**May 26, 2014**

Jennifer Morgan to BOWMAN, *"GETTING READY TO DRINK MY TEA AND LAY DOWN NOW I KNEW YOU WERE PROBABLY BUSY I HOPE YOU ENJOYED YOUR DINNER AND HOPE YOU HAVE A GOOD NIGHT I MISS YOU AND LOVE YOU MICHAEL BOWMAN"*

Based on my training and experience, and knowledge of this investigation, I believe that Jennifer Morgan utilized the text messaging service of her phone to communicate with Michael BOWMAN via the text messaging service of his cellular telephone. During the exchange Morgan refers to BOWMAN by first and last name while expressing her love for BOWMAN.

**May 28, 2014**

BOWMAN to James Muncy, *"HE WONT BE POLISHING 8 WHEELS BEFORE FRIDAY."*
BOWMAN to Muncy, *"I WILL SEE. I HAVE NOTHING TO POLISH WITH MYSELF"*

Based on my training and experience, and knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service of his cellular

11

telephone to contact James Muncy on his cellular telephone. BOWMAN told Muncy that 8 wheels (methamphetamine) will be polished after Friday and he did not have anything to polish with currently. Throughout the investigation, when referring to "Wheels", this drug organization has meant methamphetamine.

**May 29, 2014**

> Morgan to BOWMAN, "*AND YOU MADE YOUR CHOICE WHEN YOU PREFERRED A DOPE WHORE OVER ME SO YOU LIVE WITH YOUR CHOICES TOO I M ASHAMED THAT I EVEN HAD ANYTHING AT ALL TO DO WITH YOU AFTER I LEARNED WHAT YOU REALLY WERE*"

> BOWMAN to Morgan, "*IM ASHAMED THAT I HAVE LOVED A SELFISH ASS LIAR WHO HAS NEVER 4VE A DAMN ABOUT ME AND TREATED ME LIKE A PIECE OF SHIT AND I HAVE BEGGED YOU AND CHASED AFTER YOU LIKE SOMEONE STUPID AS HELL BECAUSE I HAVE LOVED YOU AND WANTED YOU SO MUCH AND YOU LIE TO MY F2E AND CLAIM TO LOVE ME SO MUCH YOU DONT GIVE AFTER YOU LIKE SOMEONE STUPID AS HELL BECAUSE I HAVE LOVED YOU AND WANTED YOU SO MUCH AND YOU LIE TO MY F2E AND CLAIM TO LOVE ME SO MUCH YOU DONT GIVE A FUCK COUT ME AND NEVER HAVE I HAVE BEEN SO FUCKING STUPID LETTING YOU DO ME THE WAY YOU HAVE I THOUIT YOU WOULD CHANGE IF YOU LOVED ME BUT YOU WIK NEVER CHANGE YOU DMT 4VE A FUCK COUT ME OR ANYONE ELSE BV JENNIFER*"

> BOWMAN to Morgan, "*PV MY RHHT OUT THERE TN YOU HAVE GET YOU SOGE FROM WHO EVER IT IS YOUR FUCKING AND BEEE GETTING IT FROM I DONT WONT YOU TO HAVE THE PLEARUR OE RMOK4NG ANY THING GOOD*"

Based on my training and experience, and knowledge of this investigation, I believe that Jennifer Morgan utilized the text messaging service of her cellular telephone to contact Michael BOWMAN. During the conversation Morgan accused BOWMAN of providing dope (methamphetamine) to girls. At the end of the conversation BOWMAN told Morgan that he wasn't going to provide methamphetamine for her to smoke any longer and he hoped she could not get any good methamphetamine.

**June 2, 2014**

> Morgan to BOWMAN, "*MAYBE NECTAR TIME YOU LL CHOOSE TO SEE ME INSTEAD OF MAKE YOUR DRUG RUNS AND KEEP YOUR WHORES SUPPLIED I WORKED IN THE KITCHEN FIXING YOU YOUR FAVORITE MEAL ONLY TO BE STOOD UP AGAIN FUCK YOU THE MEATLOAF IS GOING IN THE TRASH GET SHANA TO COOK FOR YOU NEXT TIME*"

BOWMAN to Morgan, *"GO TO HELL. I HAVE THE RECIEPT WHERE I BOUIT THE SHIT TO FIX IT WITH. I WILL STAY THE FUCK AWAY FROM YOU. YOU DMT GIVE A FUCK COUT ME"*

Morgan to BOWMAN, *"THAT S GREAT WORK ON IT TOMORROW EVENING TOO AND THE NEXT DAY BECAUSE I LL BE BUSY WORKING ON MY WATER THAT S MESSED UP WHEN I GET IT FIXED I LL LET YOU KNOW CALL SHANA AND SEE IF SHE WANTS TO STAY UP ALL NIGHT ON METH AND GET KNOTTED UP"*

Based on my training and experience, and knowledge of this investigation, I believe that Jennifer Morgan utilized the text messaging service of her cellular telephone to contact Michael BOWMAN. During the exchange Morgan made mention of BOWMAN making drug runs (picking up methamphetamine) and not coming to her house. Morgan also told BOWMAN to call *"Shana"* (Shanna Moorefield) to see if she wanted to smoke methamphetamine with him.

**June 2, 2014**

Darrell Johnson to BOWMAN, *"HEY. R U HOME PUFF DADDY??"*

BOWMAN to Johnson, *"YES. ARE YOU COMING OVER? DONTWTELL ME YOU ARE AND FUCK AROUND FOR AN HOUR AND NOT SHOW"*

Johnson to BOWMAN, *"YEA BUT IM N BRISTOL. TAKE BOUT 25 MINS TO GET THERE. US THAT OK"*

BOWMAN to Johnson, *"IF YOU COME ON"*

Johnson to BOWMAN, *"K...OMW"*

Michael Fielder to Johnson, *"I JUST NEED A HALF A LOAD!"*

Fielder to Johnson, *"I MEANT TO TELL U THAT!"*

Johnson to Fielder, *"K...CALL ME WHEN UR CUMIN SO I CAN HEAD HOME. WHEN R U CUMIN"*

Fielder to Johnson, *"NOW IF IT'S OK W U?"*

Fielder to Johnson, *"ANY LUCK"*

Johnson to Fielder, *"OMG HES ON THE WAR PATH! IM TRYIN"*

Fielder to Johnson, *"OK"*

Johnson to Fielder, *"HEAD MY WAY SIR"*

Based on my training and experience, and knowledge of this investigation, I believe that Darrell Johnson utilized the text messaging service of his cellular telephone to contact Michael Fielder and Michael BOWMAN. During the exchange Johnson asked BOWMAN if he was home and BOWMAN rushed him to get to his house. Fielder told Johnson that he only needed half a load (methamphetamine). BOWMAN rushed Johnson to get to his house to pick up the methamphetamine. Once Johnson had picked up the methamphetamine from BOWMAN he told Fielder to head his way to pick up the methamphetamine from him.

On June 19, 2014, a search warrant was applied for and obtained in the Western District of Virginia for text message content stored in the account of telephone number (276) 608-6978 (cellular telephone utilized by Michael BOWMAN). In response to the execution of this search warrant on Verizon Wireless, agents received text messages stored in that account from June 6, 2014 to June 11, 2014. The following is an excerpt from the search warrant results:

**June 6 and 7, 2014**

Michael BOWMAN to PJ Muncy, *"HELLO BUDDY WHATS GOING ON"*

BOWMAN to Muncy, *"IM ON A PLANE. LOL"*

BOWMAN to Muncy, *"OK ASS HOLE. ARE YOU EVEN DOWN THERE?"*

Muncy to BOWMAN, *"HELLO WERE U NOW"*

Muncy to BOWMAN, *"WAITIN ON U"*

BOWMAN to Muncy, *"BOARDING IN ATLANTA CALL BUDGET AND SEE IF THEY HAVE US A  BMW OR MERCEDES AVALIBLE I HAVEWA FULLSIZE RESERVED CONFORMATI6 NUMBER 43341638US4 PHONE NUMBER 281 449 0145 MICHAEL W BOWMAN TELL THEM TO HAVE IT GASSED AND READY TO GO"*

BOWMAN to Muncy, *"DID YOU GET CAR LINED OUT?"*

(276) 274-7296 to BOWMAN, *"HEY OL BOY HAVE YOU GOT YOUR BIKE BACK TOGETHER YET"*

BOWMAN to (276) 274-7296, *"NO IM ON A MISSION AFTER HIGH OCTAIN. BE LANDING AT THE BORDER IN 45 MIN AND THEN ON THE WAY BACK. 19 HOURS FROM BEING BACK HOME. SEEING ALL MY EXES. LOL"*

BOWMAN to Muncy, "*THE EAGLE HAS LANDED AND SCREAMING LIKE HELL!!-*"

Muncy to BOWMAN, "*BOUT TIME*"

BOWMAN to Muncy, "*I HAVE NO CONTROL THEY WOULDNT GIVE ME THE CMTROLS. I WOULD HAVE COME IN UPSIDE DOWN FOR A FLY BY SO THEY KNEW WE WERE HERE. LOL*"

Jennifer Morgan to BOWMAN, "*I'M WORRIED. PLEASE LET ME KNOW THAT YOU ARE OKAY. ABBEY MISSES HER DADDY AND I DO TOO*"

BOWMAN to Morgan, "*WE ARE GOOD SHAPE AND COMING THRU THE COUNTRY IN THE BEYOU COUNTRY.*"

Based on my training and experience, and knowledge of this investigation, I believe that Michael BOWMAN utilized the text messaging service of his cellular telephone to contact PJ Muncy (methamphetamine source of supply for BOWMAN), Jennifer Morgan (girlfriend of BOWMAN) and user of telephone number (276) 274-7296 (methamphetamine customer of BOWMAN'S). During the exchange, BOWMAN conversed with Muncy about a plane trip to meet Muncy in Houston, TX. Based on records and interviews of CS', Muncy receives methamphetamine from Houston, TX and in collaboration with BOWMAN the methamphetamine is sold in Southwest, Virginia. The user of telephone number (276) 274-7296 asked BOWMAN if he had his bike back together (throughout this investigation, when referring to motorcycles and parts, the conspirators are referring to methamphetamine and money). BOWMAN responded that he had not and was landing at the border (Texas) and was getting high octane (methamphetamine). Later, Jennifer Morgan asked BOWMAN if he was ok and he told her he was fine and was coming through Bayou Country (Louisiana) on his way home.

On June 30, 2014 surveillance on a white GMC Yukon owned by BOWMAN showed that it was at the Tri Cities Airport located in Blountville, TN. ATF SA Corey Duke responded to the scene and ascertained that BOWMAN and his son, Austin Bowman, had boarded a flight with the final destination being Houston, Texas.

SA Duke, while conducting surveillance in Houston, TX observed PJ Muncy and BOWMAN along with Austin and BOWMAN'S cousin, John Bowman together. Surveillance also indicated that Muncy met with Hispanic males in a room he had rented and later was seen with a duffle bag and in a vehicle with BOWMAN. Surveillance further showed that BOWMAN and Muncy traveled in one vehicle and John Bowman and Austin Bowman traveled in separate vehicle back to Tennessee.

A traffic stop was conducted on both vehicles near Sevierville, TN by the Tennessee Highway Patrol. The Chevrolet Impala was driven by BOWMAN and the BMW driven by Austin and John Bowman. It was found that Muncy was not in the vehicle with BOWMAN. Information obtained from surveillance indicated that the Impala stopped at an exit approximately 30 minutes prior to the traffic stop. A consent

search of the Impala was conducted and a small amount of a substance believed to be methamphetamine was found in the vehicle.

An interview was conducted with John Bowman and he advised officers that they had stopped about 30 minutes prior to the traffic stop and dropped a male subject off with a bag. It is believed by agents that this man was PJ Muncy. John Bowman told officers that when the trip started he was unaware that it was "drug" trip, but was able to figure out later that it was.

Based on my training and experience, and my knowledge of this investigation, I believe that Michael Wayne BOWMAN has utilized the following telephone numbers to communicate with members of his drug trafficking organization since at least April, 2013: (276) 591-7057, (276) 274-7312, (276) 285-4937, (423) 534-7983, (423) 956-7130, (276) 696-2684, (276) 608-6978, Target Telephone #1 and others.

Based on the results of a previous search warrant, I believe that BOWMAN stopped using telephone number (276) 608-6978 on or about June 11, 2014. Toll records received for Target Telephone #1 revealed that service was initiated on June 10, 2014. A frequency report of all numbers in contact with Target Telephone #1 revealed communications with the following persons: Jennifer Morgan (184 calls with 2 different phones), PJ Muncy (179 calls with 3 different phones), Austin Bowman (65 calls), Shanna Moorefield (51 calls), Darrell Johnson (37 calls), Gary Long (29 calls), Nick Burks (24 calls), and William Booher (21 calls). These are all individuals known to law enforcement to have a methamphetamine and/or sexual relationship with BOWMAN.

SA Corey Duke, while conducting surveillance in Houston, TX on June 30-July 1, 2014, obtained consent to search a hotel room rented by BOWMAN. SA Duke found the packaging of a cellular telephone inside the room (as well as a 3 kilogram scale and money bands). The finding of this packaging further supports the fact that BOWMAN frequently changes cellular telephones and numbers. Throughout the investigation into the BOWMAN drug trafficking organization, facts have shown that BOWMAN frequently changes telephone numbers to avoid detection by law enforcement.

I believe, based on the facts set forth above, that BOWMAN has utilized Target Telephone #1 to communicate with members of his drug trafficking organization starting on June 10, 2014. Based on the information provided by CS-1 and CS-2 and the content retrieved from the search warrants mentioned above, I know that BOWMAN communicates with his drug distributors via the text messaging service of his cellular telephones.

Therefore, I believe that there is sufficient probable cause to believe that Michael BOWMAN has been utilizing the text messaging service on Target Telephone #1 to further the illicit activities of their drug trafficking organization.

## Verizon Wireless Electronic Communications

In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail and text messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless.

16

Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging."

I have spoken with representatives of Verizon Wireless and understand that during the regular course of business they may possess up to five (5) days of stored electronic communications, namely text messages.

On July 10, 2014, a letter was sent to Verizon Wireless requesting that they preserve all historical electronic communications associated with the Target Telephone(s), pursuant to Title 18 United States Code (USC) 2703(f).

## LOCATION TO BE SEARCHED AND THINGS TO BE SEIZED

I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachment A. Upon receipt of the information described in Attachment A, the information described in Attachment B will be subject to seizure by law enforcement.

## CONCLUSION

Based on my training and experience, I know that those involved in drug trafficking activities commonly use cellular telephones, to include the text messaging capabilities, to contact others to discuss and arrange drug transactions and to further their illicit drug business. I also know that it is common for those involved in drug trafficking activities to change cellular telephones and telephone numbers frequently to avoid detection by law enforcement.

Based on the foregoing, there is probable cause to believe that the stored electronic communications, specifically stored text messaging and the associated packet data for the Target Telephone(s), contain evidence of drug trafficking, specifically violations of Title 21 USC 841 and 846, Distribution of Methamphetamine and Conspiracy to Distribute Methamphetamine, respectively.

## REQUEST FOR SEALING

It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because

the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on July   , 2014, at Abingdon, Virginia.


Christopher L. Parks, Task Force Officer
Drug Enforcement Administration


SWORN AND SUBSCRIBED TO BEFORE ME
THIS _18th_ DAY OF JULY, 2014

HONORABLE JUDGE PAMELA MEADE SARGENT
UNITED STATES DISTRICT COURT IN THE
WESTERN DISTRICT OF VIRGINIA